UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| REACH AIR MEDICAL SERVICES LLC, CALSTAR AIR MEDICAL SERVICES, LLC, GUARDIAN FLIGHT LLC, MED-TRANS CORPORATION, and AIR EVAC EMS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 4:23-cv-00826 <br><br> **MOTION TO DISMISS** |

**MOTION TO DISMISS**

Defendant CIGNA HEALTH AND LIFE INSURANCE COMPANY ("CHLIC"), by and through the undersigned counsel, seeks the entry of an order dismissing the Amended Complaint of Plaintiffs, REACH AIR MEDICAL SERVICES LLC, CALSTAR AIR MEDICAL SERVICES, LLC, GUARDIAN FLIGHT LLC, MED-TRANS CORPORATION, and AIR EVAC EMS, INC. ("Plaintiffs" or "GMR Entities"), and in further support thereof would state as follows:

**INTRODUCTION**

Plaintiffs' Amended Complaint is an attempt to weaponize the No Surprises Act, 42 U.S.C. § 300gg-111 *et seq.* ("No Surprises Act" or "NSA") against healthcare insurers and claim administrators such as CHLIC. Plaintiffs allege that they have prevailed in two hundred and sixty nine (269) Independent Dispute Resolution ("IDR") arbitrations conducted under the NSA. They aver that these 269 arbitration awards represent air ambulance services provided in twenty-five different states. As more fully set forth below, all of their claims for relief fail; and even if their claims were viable, the Court should exercise the doctrine of judicial abstention to decline from hearing the case.

## II. SUMMARY OF THE ARGUMENT

In Count 1, Plaintiffs contend that the NSA provides them with a private right of action to enforce all of the arbitration awards, although Plaintiffs disavow such right comes from the Federal Arbitration Act ("FAA"), which contains the only post-arbitration remedy mentioned in the NSA. Plaintiffs also fail to attach the awards themselves or to bring enforcement actions in the numerous venues outside the Southern District of Texas where these arbitration awards were purportedly entered, despite the FAA's requirements that they do so. If, on the other hand, Plaintiffs are correct that the FAA's enforcement mechanism doesn't apply to NSA arbitration awards, Plaintiffs entire Count I fails to state a cause of action.

In Count 2, Plaintiffs claim that, to the extent CHLIC was providing services to the patients involved in those claims under employer-funded workplace health benefit plans governed by ERISA, CHLIC has violated ERISA section 502(b) by failing to pay the claims and Plaintiffs are entitled to recover for those violations by assignments of benefits where providers "stand in the shoes" of ERISA beneficiaries. This theory fails because the No Surprises Act deprives providers of the derivative standing under which they typically bring 502(b) claims by virtue of assignments of benefits, and 2) even if this were not the case, enforceable anti-assignment provisions in many of the plans would deprive them of that standing.

In Counts 3-22, Plaintiffs allege violations of the prompt pay statutes of nineteen different states, including Alabama, Arkansas, Arizona, California, Colorado, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Missouri, Mississippi, North Carolina, Nebraska, New Jersey, New Mexico, Nevada, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia, and Wyoming. These nineteen counts, comprising the overwhelming majority of the Amended Complaint, ask this Court to <u>first interpret, and then enforce,</u> nineteen

state-specific provider reimbursement statutes many of which provide no private right of action and many of which expressly delegate enforcement to specific state administrative agencies.

Count 23 seeks relief in the form of unjust enrichment; however, the state law doctrine of election of remedies applies to bar such relief in this case, because such a claim could only be brought by Plaintiffs pursuant to this Court's diversity jurisdiction, and unjust enrichment is fatally inconsistent with the other relief sought by Plaintiffs.

### III. BACKGROUND

CHLIC is a health insurer who operates Health Maintenance Organizations, ("HMO") Preferred Provider Organizations ("PPO"), Exclusive Provider Organizations ("EPO") and acts as a claims administrator to self-funded plans. Plaintiffs, an affiliated group of air ambulance companies with no contractual relationship with CHLIC, contend CHLIC is liable to them for alleged underpayments on claims for reimbursement after Plaintiffs provided air ambulance transport services to CHLIC's members.

Congress enacted the NSA to protect Americans from surprise medical bills from medical services providers outside the contracted provider networks ("out-of-network" or "OON" providers) established by health plans like CHLIC. An urgent driver for this need to protect patients was the colossal amounts that were "balance billed" to patients by providers in medical specialties that patients often lack the opportunity to select, such as emergency departments and, as is the case here, air ambulance services.

Historically, air ambulance services such as the Plaintiffs, backed increasingly in recent years by private equity investment funds, have resisted or refused offers to join health plan networks such as those operated by CHLIC, where the patient's share is contractually limited. Air ambulance service providers have relied instead on their OON status to send bills to the patients for amounts far above those the health plans agreed to pay. Such "balance billing" poses a

substantial burden on patients because out-of-network charges are often arbitrary and egregiously high, see H.R. Rep. No. 116-615, at 52 (2020) ("These unexpected medical bills can result in financial ruin"), and reflect "prices that are set to be discounted and not paid." *George A. Nation III, Healthcare and the Balance-Billing Problem*, 61 VILL. L. REV. 153, 153 (2016); s*ee also Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts., Inc.*, 832 A.2d 501, 508 (Pa. Super. Ct. 2003) (noting that billed charges "cannot be considered the value of the benefit conferred because that is not what people in the community ordinarily pay for medical services"). All too often, however, health plans such as CHLIC had to acquiesce to the rates demanded by OON providers such as air ambulance services rather than subject their members to the OON Providers' "surprise bills" in crushing amounts.

Congress addressed this dilemma by enacting the No Surprises Act, wherein OON providers are prohibited from balance billing patients, and directing health plans and OON providers to resolve disputes over the price of OON services, first through informal negotiation and then through Independent Dispute Resolution ("IDR"). The IDR process works to resolve disputes between healthcare plans OON providers by providing that federally contracted IDR Entities ("IDRE") receive submitted offers from both the health plan and the OON provider and select one of the two offers in the manner known as "Baseball Arbitration". Not later than 30 days after the date of selection of the IDRE, the IDRE is to notify the parties of its determination. 42 U.S.C. § 300gg-111(c)(5)(A)(ii). IDR awards are binding subject to limited exceptions, *see id*. § 300gg-111(c)(5)(E)(i), and payment of an IDR award "shall be made . . . not later than 30 days after the date on which such determination is made." Id. § 300gg-111(c)(6). Because the NSA provides a direct means through this IDR process for OON providers to seek reimbursement from

the health plans, the patients themselves are removed from the middle of reimbursement disputes, exactly as the Legislature intended.

Plaintiffs filed this case on March 6, 2023, originally alleging one-hundred sixty-five unpaid IDR arbitration awards (Dkt. 1). On June 9, 2023, this Court entered an Order permitting Plaintiffs to file an Amended Complaint on or before June 23, 2023 (Dkt. No. 17). Plaintiffs filed their Amended Complaint on June 23, 2023 (Dkt. No. 23. The Amended Complaint added 104 additional IDR arbitration awards, separated its claims under various state prompt pay statutes into nineteen separate counts,[1] and added an unjust enrichment count. For the reasons that follow, the Complaint is due to be dismissed.

## IV. STANDARDS OF REVIEW

1. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). When challenged, the burden of establishing federal jurisdiction rests with the party asserting its existence. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). Under Rule 12(b)(1), "a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA*, 668 F.3d at 286 (quotation omitted). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional

---

[1] Plaintiffs concede that certain state prompt pay statutes carry no private right of action by a provider because they have not pled prompt pay violations in certain of the states at issue in this Complaint. CIGNA contends Plaintiffs only omitted a small number of states on this basis, and dismissal is appropriate for several more.

attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

    2.    <u>Rule 12(b)(6).</u>

Rule 12(b)(6) allows for the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When reviewing a Rule 12(b)(6) motion to dismiss, 'the central issue is whether, in the light most favorable to the non-moving party, favorable to the plaintiff, the complaint states a valid claim for relief.'" *Millsap Waterproofing v. U.S. Fire Ins. Co.*, 2021 WL 6063620, at *1 (S.D. Tex. Dec. 21, 2021) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000) (emphasis added)).

    3.    <u>Rule 12(b)(3).</u>

A party may move to dismiss for improper venue under Rule 12(b)(3). Courts have typically imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum. *See Galderma Labs., LP v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017) (collecting cases); *see also Fernandez v. Soberon*, 2013 WL 2483345, at *2 (S.D. Tex. June 10, 2013) ("Once a defendant files a Rule 12(b)(3) motion challenging venue, the burden of sustaining venue lies with the plaintiff.").

## ARGUMENT

A.      **Count I, to Confirm The Awards, Fails to State a Claim and Mislays Venue.**

   1.   <u>The Complaint's failure to attach even a single arbitration award renders it deficient.</u>

Plaintiffs have not attached any of the IDR awards at issue in this matter to the Complaint, which fails to comply with 9 U.S.C. §13 of the Federal Arbitration Act ("FAA"), despite the fact that the sole remedy provided by the NSA to parties following the entry of an IDR award lies within the FAA[2]. Concerning the ability to enforce an arbitration award under the FAA, section 13 provides, in pertinent part:

> "[T]he party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:
>
> (a) The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award.
>
> (b) The award.
>
> (c) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application."

Accordingly, none of the arbitration awards may be confirmed, because Plaintiffs, the party seeking confirmation, failed to attach the relevant awards, as required under 9 U.S.C. § 13. Accordingly, the Complaint may be dismissed under Rule 12(b)(6), or in the alternative, Plaintiffs should be required to amend their pleadings so that they are in compliance with 9 U.S.C. § 13.

---

[2] 42 USC § 300gg–111, entitled "Preventing surprise medical bills," provides, in relevant part:
(i) In general. A determination of a certified IDR entity under subparagraph (A)—
(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; and
(II) *shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9, United States Code.* [emphasis added].

2. <u>The Complaint Mislays Venue</u>.

Venue will not lie for the unknown number of IDR determinations where the award was made outside of the U.S. Southern District of Texas. Plaintiff alleges that venue is proper in this Court because CHLIC "resides and transacts business in this district and a substantial part of the events giving rise to the claims occurred in this district." As additional support, Plaintiffs allege that Medical Evaluators of Texas ASO LLC, which issued many of the IDR awards Plaintiffs seek to confirm, is headquartered in Houston. However, 9 U.S.C. § 9 of the Federal Arbitration Act provides that parties may apply to confirm an arbitration award in the United States court "in and for the district" where the award was made. The Complaint is silent as to which of the one-hundred sixty five awards were entered here in the Southern District. The Complaint should be dismissed without prejudice to the Plaintiff's ability to replead to state the location of the entry of each award.

3. <u>If The Federal Arbitration Act Does Not Apply to the NSA, the NSA Lacks Its Own Enforcement Mechanism.</u>

CHLIC anticipates that Plaintiffs will contend, as their counsel has done in other cases, that the Federal Arbitration Act does not govern this matter substantively or procedurally. They base this on the NSA's language expressly incorporating Section 10(a) of the Federal Arbitration Act (9 U.S.C. § 10(a)), which describes the grounds constituting those rare circumstances where vacatur of an arbitration award by a District Court would be warranted. Plaintiffs argue that because other subsections of the FAA are not mentioned in the NSA, the rest of the FAA must not apply aside from Section 10(a). However, if Plaintiffs are correct, Count I of Plaintiff's Complaint fails entirely, because the ability under the FAA to enforce an arbitration award, which is the relief Plaintiffs seek in asking that the awards at issue be "converted to a federal judgment", comes solely from 9 USC § 9, which provides: "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the

court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." Absent an incorporation of more than just Section 10(a)(4) into the NSA, no such right is provided in the NSA.

### C. Count II's Allegation Based on Alleged ERISA Violations Fails to State a Claim on Which Relief Can Be Granted.

#### 1. Plaintiffs' Purported Assignments of Benefits Confer No Right to Enforce an IDR Award.

A plaintiff must have "constitutional, prudential, and statutory standing" to bring a civil action under ERISA. *Leuthner v. Blue Cross & Blue Shield of Ne. Pa.*, 454 F.3d 120, 125 (3d Cir. 2006). ERISA allows a "participant [in] or beneficiary" of an ERISA plan to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1)(B). It is well-established that healthcare providers, such as Guardian Flight, are ***not*** "beneficiaries" or other enumerated parties under ERISA and, therefore, lack standing in their own right to sue under the civil enforcement provisions of ERISA. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002).

In their complaint, Plaintiffs allege they "have been assigned the right to payment and benefits from [Defendants'] beneficiaries." Dkt. 23 at 7. Plaintiffs apparently attempt to invoke "derivative standing" under ERISA, meaning that standing (i.e., the right to sue) is derived from another source. *See Brown v. Bluecross Blueshield of Tenn., Inc.*, 827 F.3d 543, 546 (6th Cir. 2016) (stating, "[d]erivative standing confers upon the holder of a valid assignment standing to sue in place of the assignor"). Courts fashioned this *limited* exception of derivative standing to the general rule that healthcare providers cannot sue under ERISA based on the following rationale:

9

If provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to providers, who are better situated and financed to pursue an action for benefits owed for their services. *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) (cleaned up).

Critical to any alleged "derivative" standing in this case is that the NSA expressly prohibits air-ambulance providers such as Plaintiffs, from balance-billing the plan member (i.e., participant) for the out-of-network services; instead, providers can pursue negotiations, and ultimately the IDR process, for the amounts in excess of plan benefits directly from the plans. *See Haller v. United States HHS*, 621 F. Supp. 3d 343, 354 (E.D. N.Y. 2022) ("[w]hen Congress enacted the No Surprises Act, it permitted health care providers to recover payment directly from insurers for out-of-network services, which is a new public right. Out-of-network providers' claims against insurers do not arise under state common law, but instead depend 'upon the will of [C]ongress," (internal citations omitted)).

Any claimed right to payment of the IDR awards stems from the NSA, not any plan participant's rights under ERISA. Thus, it follows that the alleged "assignments"—which, here, allegedly purport to assign a right the plan members do not possess—cannot confer derivative standing for Plaintiffs to sue Defendants. *See Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009) ("where the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing"); *see also Paragon Office Servs., LLC v. UnitedHealthGroup, Inc.*, 2012 WL 1019953,

at *6 (N.D. Tex. Mar. 27, 2012) (explaining that the "crucial question" is whether plaintiffs are seeking benefits under the terms of the health plan or rights that derive from a basis independent of the agreement). Because Plaintiffs cannot sue under the alleged assignments, Plaintiffs' ERISA claims fail for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

        2.      <u>The Assignments Would Be Unenforceable In Any Event Under Common Anti-Assignment Language in ERISA Plans.</u>

Second, even if the NSA did not deprive OON providers of their standing to bring reimbursement claims against health plans, Plaintiffs here lack standing under ERISA self-insured plans where those plans contain valid anti-assignment of benefits provisions. "Standing is not "dispensed in gross," and, accordingly, a plaintiff must demonstrate standing for each claim "he seeks to press and for each form of relief that is sought." See *Davis v. FEC*, 554 U.S. 724, 734 (2008). Moreover, when there are multiple parties to a lawsuit brought in federal court, "[f]or all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor as of right." See *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. ___, No. 16–605, slip op. at 6 (2017).

The Complaint does not identify any plans by name, but within the twenty-nine states where Plaintiffs allegedly provided services are numerous jurisdictions enforcing anti-assignment provisions in ERISA plans, such as, for example, Georgia. *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 933 (11th Cir. 2021). A conclusory allegation that the Plaintiffs have standing because of the purported assignments of benefits does not demonstrate standing because the plans contain anti-assignment provisions that are enforceable in many if not most of the states in which the patients' received services.

**D.     Counts Three through Twenty-Two Allege Violation of Numerous Distinct State Prompt Pay Laws Enforced by State Agencies, Necessitating Judicial Abstention.**

This case cries out for judicial abstention. Abstention is proper where "granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency." This is precisely what the Plaintiffs ask the Court to do, repeatedly, in Count Three through Twenty-Two. The Court should decline to do so and should abstain from hearing this case, dismissing the action in its entirety.

The No Surprises Act requires that when the law of a particular state determines the total amount payable under a health plan, coverage, or issuer for emergency services or to nonparticipating providers related to patient visits to participating facilities for nonemergency services, the State law will apply, rather than the Federal IDR process. TD 9965, 87 FR 52618, 52644. In Counts Three through Twenty-Two, Plaintiffs allege violations of the prompt pay statutes in the majority of the twenty-nine states in which air ambulance flights took place. Plaintiffs cite this mass of state laws as imposing individual deadlines by state for the payment of IDR awards as well as state-specific penalties for failure to do so.

Abstention is proper when a federal court has "been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result of the case then at bar." *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 3 L. Ed. 2d 1058, 79 S. Ct. 1070 (1959)). The crux of the analysis is that the exercise of federal jurisdiction would disrupt states' attempts to "establish a coherent policy with respect to a matter of substantial public concern." *Id*. Such is exactly the case here, where authority concerning enforcement of the majority of the cited prompt pay violations are given to specific state regulatory agencies in each state. As shown on the table below, several of the cited prompt pay statues have

no private cause of action, and enforcement is delegated instead to their states' healthcare- and/or insurance-oriented administrative agencies:

| **State** | **Statute(s)** | **Relevant Statutory Language** | **Authority That Statute Provides No Right of Action or Fee Entitlement, (if applicable)** |
|---|---|---|---|
| Alabama (Count 3) | Ala. Code § 27-1-17 | Ala. Code § 27-1-17(i): <br><br> "The commissioner may assess an administrative fine against any insurer, health service corporation, or health benefit plan or may suspend or revoke the license or certificate of authority of any insurer, health service corporation, or health benefit plan after determining that the insurer, health service corporation, or health benefit plan has violated the requirements of subsections (e), (f), and (g) or has established a pattern of overdue payments and that the contemplated enforcement action would not promote the deterioration of the financial condition of an at-risk insurer, health service corporation, or health benefit plan." | No provision in statute for attorneys' fees. |
| Georgia (Count 6) | Ga. Code Ann. § 33-24-59.14 | See Ga. Code Ann. § 33-24-59.5(d). Definitions; timely payment of health benefits; notification of failure to pay; penalties; applicability. <br><br> "An insurer may only be subject to an administrative penalty by the Commissioner as authorized by the insurance laws of this state when such insurer processes less than 95 percent of all claims in a standard financial quarter in compliance with paragraph (1) of subsection (b) of this Code section. Such penalty shall be assessed on data collected by the Commissioner." | No case law providing a private right of action; *cf America's Health Ins. Plans v. Hudgens*, 915 F. Supp. 2d 1340, 1352 (N.D. Ga. 2012) ("ignoring [Georgia's prompt pay statute] will expose [health plans] to penalties imposed by the Commissioner. The Commissioner has publicly announced his intention to enforce the amended Prompt Pay Statute….") |

1059653\314111188.v1

| | | | |
|---|---|---|---|
| Indiana (Count 8) | Ind. Code Ann. § 27-8-5.7-8 | Ind. Code Ann. § 27-8-5.7-8(a):<br><br>"If the commissioner finds that an insurer has failed during any calendar year to process and pay clean claims in compliance with this chapter, the commissioner may assess an aggregate civil penalty against the insurer according to the following schedule."<br><br>Ind. Code Ann. § 27-8-5.7-8(d):<br><br>"If the commissioner imposes a civil penalty under this section, the commissioner may not impose a penalty against the insurer under IC 27-4-1 for the same activity." | No case has held that there is a private right of action. |
| Kansas (Count 9) | Kan. Stat. Ann. § 40-2442 | Kan. Stat. Ann. § 40-2442(g)-(h):<br><br>(g): Any violation of this act by an insurer issuing a policy of accident and sickness insurance with flagrant and conscious disregard of the provisions of this act or with such frequency as to constitute a general business practice shall be considered a violation of the unfair trade practices act in K.S.A. 40-2401 et seq., and amendments thereto.<br><br>(h): The commissioner of insurance shall adopt rules and regulations necessary to carry out the provisions of the Kansas health care prompt payment act. | *Jahnke v. Blue Cross & Blue Shield of Kan., Inc.*, 51 Kan. App. 2d 678, 696 (Kan. Ct. App. 2015) ("[we] agree that KUTPA affords no private right of action.") |
| Kentucky (Count 10) | Ky. Rev. Stat. Ann. § 304.17A-702 | See Ky. Rev. Stat. Ann. § 304.17A-730(2). Payment of interest for failing to pay, denying, or settling a clean claim as required: | *Ky. Spirit Health Plan, Inc. v. Premiertox, Inc.*, No. 2012-CA-001457-MR, 2014 Ky. App. Unpublished LEXIS 57 (Ky. Ct. |

14

| | | | |
|---|---|---|---|
| | | "When paying a claim after the time required by KRS 304.17A-702, the insurer shall add the interest payable to the amount of the unpaid claim without the necessity for any claim for that interest to be made by the provider filing the original claim." | App. Jan. 24, 2014) (declining to determine whether a private cause of action exists for the claim of prompt pay violations). |
| Mississippi (Count 12) | Miss. Code Ann. § 83-9-5 | Miss. Code Ann. § 83-9-5(h)(4):<br><br>"In the event the insurer fails to pay benefits when due, the person entitled to such benefits may bring action to recover such benefits, any interest which may accrue as provided in subparagraph 3 of this paragraph (h) and any other damages as may be allowable by law." | Does not provide for attorneys' fees or any other exemplary measure of damages. |
| Nebraska (Count 13) | Neb. Rev. Stat. 44-8001 *et seq* | Neb. Rev. Stat. 44-8008(1). Compliance with act; unfair payment pattern; director; powers and duties; enforcement; penalty.<br><br>"An insured, a representative of an insured, or a health care provider acting on behalf of the insured may notify the director of activities related to an unfair payment pattern." | No case has held that there is a private right of action. |
| New Jersey (Count 14) | N.J. Stat. Ann. §§ 17B:30-26 to 17B:30-34<br><br>N.J. Admin Code § 11:22-1.1 *et seq.* | N.J. Admin Code § 11:22-1.15(b):<br><br>"The Commissioner may impose a civil penalty of not more than $ 10,000 upon the carrier, ODS, or the agent of a carrier or ODS, to be collected pursuant to the Penalty Enforcement Law, N.J.S.A. 2A:58-1 et seq., if, following the remediation measures in (a) above, the Commissioner determines that…" | No case has held that there is a private right of action. |
| New Mexico (Count 15) | N.M. Admin. Code § | N.M. Admin. Code § 13.10.28.13(7): | No case has held that there is a private right of action. |

15

| | | | |
|---|---|---|---|
| | 13.10.28.1 *et seq.* | " If the superintendent determines, at his sole discretion, that a hearing is necessary, then the provider and the health carrier may appear and may elect to be represented by counsel at the hearing." | |
| Ohio (Count 17) | ORC Ann. §§ 3901.38-3901.501 | ORC Ann. § 3901.3810(A):<br><br>"A provider or beneficiary aggrieved with respect to any act of a third-party payer that the provider or beneficiary believes to be a violation of sections 3901.381 to 3901.388 of the Revised Code may file a written complaint with the superintendent of insurance regarding the violation." | *Riverview Health Inst. LLC v. Medical Mut. Of Ohio*, 601 F. 3d 505, 517 (6th Cir. 2010) ("Ohio's insurance scheme does not afford a private right of action."). |
| Texas (Count 20) | Tex. Ins. Code. Ann. § 843.336 *et seq.* and § 1301.101 *et seq.* | "A physician or provider may recover reasonable attorney's fees and court costs in an action to recover payment under this subchapter." | An OON provider may not assert a cause of action against a health plan for violation of Texas's prompt pay statute. *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013), see also Tex. Att'y Gen. Op. KP-0250 (May 22, 2019), at *2. |

Under these circumstances, especially considering the novel interplay between the state prompt pay statutes and the NSA, abstention is proper because the case would present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result of the case then at bar" and would disrupt the power of the various states to establish cohenrent policy, many of which have not yet had the opportunity to address their prompt pay statutes within the context of the NSA. *Louisiana Power & Light,* 360 U.S. 25. Moreover, judicial abstention is appropriate in any case where the relief sought would require a District Court to step into the shoes of and assume or interfere with the functions of an administrative agency.

*Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1085 (N.D. Cal. 2011). A clearer-cut example of this principle could not exist then here, where Plaintiff expressly seeks remedies in this Court concerning a large number of statutes which only empower state administrative agencies to enforce them. For these reasons, the Court should abstain and dismiss this case.

**E.     The States Cited in Counts 3, 5, 8, 9, 10, 14, 15 and 17 Provide No Private Right of Action and an Count 20 fails because OON Provider Cannot Assert a Texas Prompt Pay Violation Claim.**

The fact that numerous prompt pay statutes provide no right of action also calls for dismissal of the Complaint. *Kearney v. Blue Cross and Blue Shield of North Carolina*, 233 F.Supp.3d 496, 506 (M.D. N.C. 2017) (dismissing private litigant's North Carolina Prompt Pay Act claim because the statute does not provide for a private right of action). Of the nineteen state prompt pay statutes invoked by Plaintiffs, eight (Georgia, Indiana, Kansas, Kentucky, Nebraska, New Jersey, New Mexico, Ohio) provide no private right of action. Still others do not allow for an action by an OON provider. *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013) ("As there is no contract between Aetna and [Plaintiffs], Aetna could not have violated the [prompt-pay] statute.")); see also Tex. Att'y Gen. Op. KP-0250 (May 22, 2019), at *2 ("the penalty provisions in sections [TEX. INS. CODE §§] 843.342 and 1301.137 cannot apply to claims filed by out-of-network emergency care providers pursuant to sections 843.351 or 1301.069").

Even among those states with prompt-pay statutes that provide for a private right of action, several do not provide for the type of relief Plaintiff seeks in addition to receiving payment, including Alabama (*see* Ala. Code § 27-1-17) and Mississippi (which permits recovery of only actual damages and interest, *see* Miss. Code Ann. § 83-9-5). Accordingly, Plaintiff's Complaint should be dismissed as to Counts 3, 5, 8, 9, 10, 14, 15, 17 and 20, and its prayer for attorneys' fees should be stricken as to Counts 2 and 12.

17

**F.      Plaintiff's Count Twenty-Three, For Unjust Enrichment, Fails Pursuant to the Doctrine of Election of Remedies.**

The doctrine of election of remedies bars a plaintiff from pursuing two inconsistent remedies. *Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex. 1996); *Pipes v. Hemingway*, 358 S.W.3d 438, 449 (Tex. App.—Dallas 2012, no pet.). The election of remedies doctrine may bar relief when a party exercises an informed choice between two or more remedies which are so inconsistent as to constitute manifest injustice. *Pipes*, 358 S.W.3d at 449; *see City of Glenn Heights v. Sheffield Dev. Co.*, 55 S.W.3d 158, 164 (Tex. App.—Dallas 2001, pet. denied). Here, the Plaintiff, having availed itself of the remedy of the IDR process, cannot claim entitlement to the inconsistent remedies of a purported implied cause of action under the NSA, a variety of ERISA benefit determination claims, and state prompt pay statutes on the one hand, and the equitable remedy of unjust enrichment on the other. It can only claim unjust enrichment to the exclusion of all other remedies. The election of remedies doctrine here, where Plaintiff has invoked the Court's diversity jurisdiction in this case and can point to no federal basis for jurisdiction over an unjust enrichment claim. *McKinney v. Garnett Co.*, 817 F.2d 659, 671 (10th Cir. 1987) ("In a diversity case, the doctrine of election of remedies is an element of state substantive law which we are bound to apply."). Thus, Count 23 should be dismissed.

## V: CONCLUSION

For the reasons set forth more fully above, CIGNA Health and Life Insurance Co., Inc. respectfully requests the Court enter an order dismissing this action, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ *Kyle A. Ferachi*

Kyle A. Ferachi
Texas Bar No. 24072624
5151 San Felipe, Suite 1380
Houston, TX 77056
Telephone: 346-344-4500
Facsimile   312-704-3001
kferachi@hinshawlaw.com

Steven D. Lehner, *Admitted Pro Hac Vice*
Florida Bar No. 39373
Ruel W. Smith, *Admitted Pro Hac Vice*
Florida Bar No. 36548
100 South Ashley Drive, Suite 1310
Tampa, FL 33602
Telephone: 813-276-1662
Facsimile: 813-436-8738
slehner@hinshawlaw.com
rsmith@hinshawlaw.com

*Attorneys for Defendant CIGNA HEALTH AND LIFE INSURANCE COMPANY*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this Motion to Dismiss was filed electronically using the Court's CM/ECF system. Notice of this filing will be sent to all known counsel of record and interested parties by operation of the court's CM/ECF system as authorized by Rule 5 of the Federal Rules of Civil Procedure on July 14, 2023, including:

Adam T. Schramek
Norton Rose Fulbright US LLP
98 San Jacinto Boulevard, Suite 1100,
Austin, Texas  78701-4255
adam.schramek@nortonrosefulbright.com

/s/ *Kyle A. Ferachi*
Kyle A. Ferachi

1059653\314111188.v1